## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| ANNA ROGALSKA, | ) | |
| | ) | No. 15 C 5430 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | Magistrate Judge Maria Valdez |
| NANCY A. BERRYHILL, Acting | ) | |
| Commissioner of the U.S. Social | ) | |
| Security Administration,[1] | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Anna Rogalska ("Plaintiff") appeals the decision of the Commissioner of the Social Security Administration ("SSA") denying her Social Security disability insurance benefits, under Title II ("DIB"), and her supplemental security income benefits under Title XVI ("SSI") of the Social Security Act ("the Act"). Plaintiff filed a motion for summary judgment [Doc. No. 11] and the Commissioner has filed a cross-motion for summary judgment [Doc. No. 20]. For the reasons stated below, Plaintiff's motion for summary judgment is denied and the Commissioner's decision is sustained.

## BACKGROUND

### I.    Procedural History

Plaintiff filed dual applications for DIB and SSI on June 7, 2012, alleging a disability onset date of February 15, 2012, due to lumbar problems. (R. 202–09.) Her

---

[1] Nancy A. Berryhill is substituted for her predecessor, Carolyn W. Colvin, pursuant to Federal Rule of Civil Procedure 25(d).

initial applications were denied on September 21, 2012, and again at the reconsideration stage on February 1, 2013. (R. 80–83.) Plaintiff requested a hearing before an Administrative Law Judge ("ALJ") on February 12, 2013, and the hearing was scheduled on January 23, 2014. (R. 24–51, 145–46.) Plaintiff appeared at the hearing with her attorney and offered testimony. (R. 24–51.) A vocational expert ("VE") also appeared and offered testimony. (*Id*.) On February 14, 2014, the ALJ issued a written decision denying Plaintiff's applications for DIB and SSI. (R. 8–19.) The Appeals Council ("AC") denied review on April 24, 2015, leaving the ALJ's decision as the final decision of the Commissioner and, therefore, reviewable by the District Court under 42 U.S.C. § 405(g). (R. 1–3); *See Haynes v. Barnhart*, 416 F.3d 621, 626 (7th Cir. 2005); *Herron v. Shalala*, 19 F.3d 329, 332 (7th Cir. 1994).

## II. FACTUAL BACKROUD[2]

Plaintiff was born on March 21, 1962, and was fifty-one years old at the time of the hearing. (R. 22.) She received a degree in economics in Poland. (R. 30.) Plaintiff was last employed as a housekeeper, but stopped working in February 2012 due to her lumbar back pain. (R. 233–34.)

## A. <u>Medical Evidence</u>

Plaintiff's record contains several handwritten notes from appointments with Dr. Jerry A. Jakimiec, M.D., dated as early as 2003. (R. 303–24.) Although large portions of Dr. Jakimiec treatment notes are illegible, they generally reflect that

---

[2] The following facts from the parties' briefs are undisputed unless otherwise noted.

Plaintiff presented to him for pain, coughing, fevers, and follow-ups. (*Id.*) On September 20, 2011, Dr. Jakimiec prescribed Plaintiff Effexor.[3] (R. 312.)

On April 19, 2012, approximately two months after her alleged onset date, Plaintiff returned to Dr. Jakimiec complaining of left shoulder pain accompanied by decreased range of motion, numbness, and tingling. (R. 301.) Dr. Jakimiec referred Plaintiff for an MRI of her thoracic spine on April 23, 2012, which revealed a subtle disc bulge less than 2.0mm in size at the T6-T7 level and some early thoracic spondylosis.[4] (R. 302.)

Starting on June 22, 2012, Plaintiff presented to chiropractors Paul Stoetzel, D.C. and Allen Buresz, D.C. (R. 409.) Initially, Plaintiff presented to Dr. Stoetzel complaining of neck and upper left back pain which she rated 9/10 on the pain scale. (R. 409.) She returned to the chiropractors five times in the following week for treatment. (R. 394–411.) At the end of June, Dr. Stoetzel stated that Plaintiff exhibited asymmetry/misalignment in her cervical, lumbar, and thoracic spines, severe pain and tenderness in her T1-T8 vertebrae, and myospasms in her cervical, lumbar, and thoracic areas. (R. 394–95.) Due to his findings, he diagnosed Plaintiff with brachial neuritis, displacement of the cervical intervertebral disc, lesions in the thoracic and cervical spine, and subluxation/nonallopathic lesions.[5] [6] (R. 395.)

---

[3] Effexor is a "trademark for preparations of venlafaxine hydrochloride," which is "used as an antidepressant and antianxiety agent." *Dorland's Medical Dictionary* http://www.dorlands.com (last visited March 1, 2017) [hereinafter *Dorland's* ].

[4] Spondylosis is "degenerative joint disease affecting the lumbar vertebrae and intervertebral disks, causing pain and stiffness." *Dorland's.*

[5] Dr. Stoetzel's full diagnosis list included: (1) brachial neuritis or radiculitis, NOS, cervical; (2) displacement of cervical interbertebral disc without myelopathy; (3) subluxation/nonallopathic lesion (segmental dysfunction), thoracic region; (4) myalgia and

To treat, he prescribed chiropractic adjustment and an ultrasound to increase Plaintiff's molecular movement, stimulate tissue repair, and increase Plaintiff's circulation. (*Id.*)

On July 2, 2012, Plaintiff returned to Dr. Stoetzel complaining of increased upper back pain because she had attempted to force a door open after cleaning a house for ten hours. (R. 390.) Three days later, on July 5, 2012, Plaintiff reported pain and numbness in her upper left back and left arm after cleaning a home for five hours. (R. 382.) Dr. Stoetzel opined that Plaintiff was failing to respond to her treatment and appeared to be aggravating her spinal condition with normal activities of daily living, but he did not change his treatment plan. (R. 384.) Starting in August 2012, Plaintiff's care switched primarily to Dr. Allen Buresz. (R. 369.) She presented to him eight more times until October 2012. (R. 346–371.) Her diagnosis remained unchanged throughout her course of treatment. (R 348–370.)

On September 6, 2012, Plaintiff presented to Dr. Fauzia Rana, M.D., for a consultative medical examination. (R. 332–40.) Generally, Dr. Rana noted that Plaintiff was uncooperative throughout the examination and that she complained of pain each time she moved. (R. 332.) Upon examination of Plaintiff's spine, Dr. Rana stated that she had decreased flexion, but that overall she had no anatomic abnormality of the cervical, thoracic, or lumbar spine. (R. 334.) She also found that Plaintiff was able to sit, speak, and hear without difficulty, and that she had no

---

myositis, unspecified, cervical, and thoracic; (5) subluxation/nonallopathic lesion (segmental dysfunction), cervical region; (6) pain in thoracic spine; (7) rotator cuff syndrome, NOS; (8) spasm of muscle, thoracic; and (9) thoracic spondylosis with myelopathy. (R. 395.)
[6] Subluxation is "an incomplete or partial dislocation." *Dorland's.*

muscle spasms or atrophy, or tenderness upon palpitation. (R. 334–35.) Dr. Rana diagnosed Plaintiff with degenerative arthritis and opined that she had some difficulty in prolonged lifting and carrying due to her chronic back pain and shoulder pain. (R. 334–35.)

On September 8, 2012, Plaintiff underwent an MRI of her lumbar spine which revealed degenerative disc changes at L4-L5 and L5-S1 and anterolisthesis[7] of L4 over L5 vertebral body. (R. 344.)

On December 24, 2012, Dr. Buresz completed a medical assessment of Plaintiff's ability to do work related activities. (R. 420–23.) In making his determinations, he considered his own treatment history with Plaintiff, as well as her two MRIs from April and September of 2012. (*Id.*) Dr. Buresz opined that Plaintiff suffered from chronic total functional impairment whenever attempting any activity and that she could not sit, stand, or walk for any time during the day. (R. 420–21.) Moreover, he opined that she could not lift, bend, carry, push/pull, or handle any objects. (R. 421.)

Plaintiff returned to Dr. Buresz in July 2013 and continued treatment with him until January 2014. (R. 525–569.) Her diagnoses and treatment plan remained largely unchanged from her previous visits. (*Id.*)

Plaintiff's medical evidence also contains a disability determination provided by Dr. Galle, a state agency consultant. (R. 94–103.) Dr. Galle reviewed all of

---

[7] *Dorland's* redirects its entry for "anterolisthesis" to the entry for "spondylolisthesis." *Dorland's*, *supra* note 4.

Plaintiff's records, including her treatments with Drs. Rana and Buresz, as well as her MRIs, and determined that she retained the capacity for light work. (R. 99.)

## B. **Plaintiff's Testimony**

Plaintiff testified that she experiences sharp, almost unbearable, pain throughout her entire back including some compression in her spine which presses on the nerves in her arms, causing them to become numb. (R. 36–37.) She also reported pain in her lower back which makes it uncomfortable for her to sit for more than five to ten minutes at a time, or walk for more than twenty minutes at a time. (R. 37, 39.) She stated that she experiences pain in shoulders which is stronger in severity than the pain in her back. (R. 45.) The pain prevents her from being able to reach overhead. (*Id.*)

Plaintiff testified that at the time of the hearing she was still working as a meal prepper two to three days per week for two or three hours per day. (R. 31–32; 40.) Her duties included preparing small meals, placing dishes in the dishwasher, and light dusting. (R. 33.) She stated that she is unable to perform tasks that required lifting, bending, or heavy work because the movements cause her pain. (R. 32–33.) Plaintiff stated that at home she was unable to clean or do dishes. (R. 41.) In a function report, Plaintiff reported that she could only do laundry with her right hand due to pain. (R. 241.)

Plaintiff stated that Dr. Jakimiec was her family doctor. (R. 33.) She explained that he referred her to physical therapy but that she did not attend. (R. 35.) She also reported that Dr. Jakimiec sent her to an orthopedic specialist in the

spring of 2013. (R. 35.) Plaintiff testified that she does not have any records from her visit to the specialist; however he recommended she visit a chiropractor. (*Id.*) She also testified that Dr. Jakimiec never recommended any steroid injections for her pain. (R. 36.)

C. **Vocational Expert's Testimony**

VE, Leann Bloom, was present via telephone and offered testimony. (R. 46–51.) The ALJ asked the VE whether a hypothetical person with Plaintiff's same age, education, and work experience, who retained a residual functional capacity ("RFC") to perform light work limited to occasionally climbing ladders, ropes, and scaffolds and occasionally reaching above shoulder level with either upper extremity could perform Plaintiff's past relevant work. (R. 47–48.) The VE opined that the hypothetical individual could not perform Plaintiff's past relevant work as a cleaner because the job required frequent reaching and handling, but that the individual could perform Plaintiff's past relevant work as a child monitor. (R. 48.) The VE also opined the hypothetical individual could perform additional work as an usher, host, and hand packager. (*Id.*)

On cross-examination, Plaintiff, through her counsel, asked the VE whether the jobs she listed would remain available to an individual who needed to sit and stand on the job. (R. 49.) The VE opined that, based on her training and experience, the individual would still be able to work as a hand packager, but that they would be precluded from the usher and host positions. (*Id.*) Counsel then asked whether an individual would still be eligible for competitive employment if they required a

break to lie down outside of the normal rest breaks. (R. 49.) The VE opined such a need would preclude the individual from competitive employment. (*Id.*)

## D. ALJ Decision

On February 14, 2014, the ALJ issued a written determination denying Plaintiff's DIB and SSI applications. (R. 8–19.) As an initial matter, the ALJ found that Plaintiff had met the insured status requirements of the Act through December 31, 2016. (R. 13.) At step one, the ALJ determined that Plaintiff had not engaged in Substantial Gainful Activity ("SGA") since her alleged onset date of February 15, 2012. (*Id.*) At step two, the ALJ found that Plaintiff had the severe impairments of mild degenerative disc disease of the lumbar spine and thoracic spine, and neck and bilateral shoulder arthralgias. (*Id.*) At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments of 20 C.F.R. Part 404, Subpart P, App'x 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 416.920(d), 416.925 and 416.926). (R. 14.) Before step four, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform light work. (R. 15.) The ALJ also found that Plaintiff's RFC was further limited to only occasionally climbing of ladders, ropes, and scaffolds and occasionally reaching with her bilateral upper extremities. (*Id.*) At step four, the ALJ concluded that Plaintiff was not capable of performing any of her past relevant work. (R. 18.) Finally, at step five, the ALJ found that there were jobs that existed in significant numbers in the national economy that Plaintiff could perform. (*Id.*) Specifically, the ALJ found that Plaintiff could work as an usher,

host, and hand packager. (R. 19.) Because of this determination, the ALJ found that Plaintiff was not disabled under the Act. (*Id.*)

**DISCUSSION**

## I.    ALJ LEGAL STANDARD

Under the Act, a person is disabled if she has an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(a). In order to determine whether a plaintiff is disabled, the ALJ considers the following five questions in order: (1) Is the plaintiff presently unemployed? (2) Does the plaintiff have a severe impairment? (3) Does the impairment meet or medically equal one of a list of specific impairments enumerated in the regulations? (4) Is the plaintiff unable to perform her former occupation? and (5) Is the plaintiff unable to perform any other work?  20 C.F.R. § 416.920(a)(4).

An affirmative answer at either step 3 or step 5 leads to a finding that the plaintiff is disabled. *Young v. Sec'y of Health & Human Servs.*, 957 F.2d 386, 389 (7th Cir. 1992). A negative answer at any step, other than at step 3, precludes a finding of disability. *Id.* The plaintiff bears the burden of proof at steps 1–4. *Id.* Once the plaintiff shows an inability to perform past work, the burden then shifts to the Commissioner to show the plaintiff's ability to engage in other work existing in significant numbers in the national economy. *Id.*

## II.    JUDICIAL REVIEW

Section 405(g) provides in relevant part that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Judicial review of the ALJ's decision is limited to determining whether the ALJ's findings are supported by substantial evidence or based upon legal error. *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000); *Stevenson v. Chater*, 105 F.3d 1151, 1153 (7th Cir. 1997). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). This Court may not substitute its judgment for that of the Commissioner by reevaluating facts, reweighing evidence, resolving conflicts in evidence, or deciding questions of credibility. *Skinner*, 478 F.3d at 841; *see also Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008) (holding that the ALJ's decision must be affirmed even if "'reasonable minds could differ'" as long as "the decision is adequately supported") (citation omitted).

The ALJ is not required to address "every piece of evidence or testimony in the record, [but] the ALJ's analysis must provide some glimpse into the reasoning behind her decision to deny benefits." *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001). In cases where the ALJ denies benefits to a plaintiff, "he must build an accurate and logical bridge from the evidence to his conclusion." *Clifford*, 227 F.3d at 872. The ALJ must at least minimally articulate the "analysis of the evidence with enough detail and clarity to permit meaningful appellate review." *Briscoe ex*

*rel. Taylor v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005); *Murphy v. Astrue*, 496 F.3d 630, 634 (7th Cir. 2007) ("An ALJ has a duty to fully develop the record before drawing any conclusions . . . and must adequately articulate his analysis so that we can follow his reasoning . . . ."); *see Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005).

Where conflicting evidence would allow reasonable minds to differ, the responsibility for determining whether a plaintiff is disabled falls upon the Commissioner, not the court. *See Herr v. Sullivan*, 912 F.2d 178, 181 (7th Cir. 1990). However, an ALJ may not "select and discuss only that evidence that favors his ultimate conclusion," but must instead consider all relevant evidence. *Herron v. Shalala*, 19 F.3d at 333; *see Scrogham v. Colvin*, 765 F.3d 685, 698 (7th Cir. 2014) ("This 'sound-bite' approach to record evaluation is an impermissible methodology for evaluating the evidence.").

### III. ANALYSIS

Plaintiff asserts that the ALJ made three errors. First, Plaintiff argues that the ALJ improperly weighed the opinion of treating chiropractor, Dr. Allen Buresz, D.C. Second, Plaintiff argues that the ALJ's step three determination was not supported by substantial evidence. Lastly, Plaintiff argues that the ALJ's credibility finding was patently wrong. The Court finds that the ALJ did not commit these errors.

### A.    The ALJ Properly Weighed the Treating Chiropractor's Opinion

First, Plaintiff asserts that the ALJ improperly weighed the opinion of her

treating chiropractor, Dr. Buresz, under Social Security Ruling ("SSR") 06-3p. (Pl.'s Br. at 6–9.) In her decision, the ALJ assigned no weight to the opinion of Dr. Buresz because she determined that, as a chiropractor, he was not an "acceptable medical source." (R. 17.) Additionally, the ALJ found that his opinion was not supported by other objective medical evidence in the record. (R. 17.) The court agrees with the ALJ's finding.

According to SSR 06-3p, only "acceptable medical sources" can give medical opinions. SSR 06-3p. Examples of "acceptable medical sources" include licensed physicians and psychologists. *Id.* Notably, chiropractors are not categorized as "acceptable medical sources" under SSR 06-3p and instead are considered "other sources." *Id.* SSR 06-3p goes on to state that an ALJ may use evidence from "other sources" to show the *severity* of an applicant's impairments, but evidence obtained from "'other sources' cannot establish the existence of a medically determinable impairment. *Id.*

In the present case, the ALJ was not required to rely on Dr. Buresz's diagnoses. As a chiropractor, Dr. Buresz is not considered an "acceptable medical source" under SSR 06-3p, and therefore he cannot establish the existence of a medically determinable impairment. Dr. Buresz's opinions could, however, help demonstrate the severity of Plaintiff's impairments, if the diagnoses were already established by an "acceptable medical source." No such evidence is present in this case.

Plaintiff presented to Dr. Jakimiec, a physician and "acceptable medical source," starting in 2003. The legible portions of Dr. Jakimiec's notes indicate presentations for general pain, coughing, and fevers, but do not support any of Dr. Buresz's diagnoses which included brachial neuritis, displacement of the cervical intervertebral disc, lesions in the thoracic and cervical spine, and subluxation/nonallopathic lesions. The diagnosis from Dr. Rana, another physician and "acceptable medical source", also does not support Dr. Buresz's findings. At her examination in September 2012, Dr. Rana diagnosed Plaintiff with degenerative arthritis. In her report, she did not indicate that Plaintiff suffered from any of the other ten impairments that Dr. Buresz had listed. Finally, Dr. Buresz's findings are also unsupported by Plaintiff's imaging evidence. Plaintiff's MRIs from April and September 2012 only revealed a subtle disc bulge in Plaintiff's back and degenerative disc changes. Because none of the medical evidence corroborates Dr. Buresz's diagnoses, the ALJ was not required to accept Dr. Buresz's opinions to help demonstrate the severity of Plaintiff's impairments.

Plaintiff argues that even if Dr. Buresz could not offer a medical opinion, the ALJ should have accorded his opinion substantial weight. Plaintiff contends that Dr. Buresz's opinions were entitled to substantial weight because he was Plaintiff's "main treating source." (Pl.'s Br. at 8.) Plaintiff's argument is unpersuasive. Under SSR 06-3p only an "acceptable medical source" may be considered a "treating source." SSR 06-3p. Moreover, it is only "treating sources" whose opinions may be entitled to controlling weight. *Id.* As discussed above, Dr. Buresz is not considered

an "acceptable medical source" under SSR 06-3p, thus in turn, he cannot be considered a "treating source." For this reason, the ALJ was not required to accord his opinion "controlling weight."

Plaintiff's argument continues that the ALJ should have accorded substantial weight to Dr. Buresz's opinions due to the extent and nature of their treatment relationship and the supportability of Dr. Buresz's findings. (Pl.'s Br. at 7). In her decision, the ALJ acknowledged Plaintiff' eighteen month history of treatment with Dr. Buresz, her frequent appointments, his status as a chiropractor, and the list of diagnoses that he provided; however, she found that the record contained little objective evidence to support his findings. (R. 17.) The court agrees.

In her decision, the ALJ pointed to several records which were inconsistent with Dr. Buresz opinions. First, the ALJ pointed to two medical records which indicated that Plaintiff had continued to work after her alleged onset date. On July 2, 2012, Plaintiff reported pain in her back after trying to force a door open after cleaning a house for ten hours. (R. 390.) A few days later on July 5, 2012, she reported additional pain after cleaning for five hours. (R. 382.) The ALJ found this medical evidence inconsistent with Dr. Buresz's opinion that Plaintiff could walk, sit, and stand for zero hours in an eight hour work day. Moreover, she found them contradictory to Dr. Buresz's prognosis opinion where he stated Plaintiff experienced "chronic total functional impairment, whenever attempting any activity." (R. 420.)

Next, the ALJ considered whether Dr. Buresz's opinions were supported by any objective tests, including Plaintiff's MRIs. (R. 17.) For the same reasons as above, she found that there was "little objective evidence to support [his] diagnoses." (R. 17.)

Finally, the ALJ noted that Plaintiff had not seen a neurologist or other "acceptable medical source" or undergone any injections or treatment modalities. (R. 17.) In total, the ALJ determined that these findings questioned the severity of Plaintiff's impairments. (R. 17.)

Based on her findings, the ALJ accorded little weight to Dr. Buresz's opinion. (*Id.*) Due to this discussion, the court finds that the ALJ articulated her path of reasoning and supported her conclusions with substantial evidence. Thus, we find that she committed no error in this regard.

Plaintiff also takes issue with the ALJ's assessment of Dr. Rana's opinion. Specifically, Plaintiff contends that the ALJ "played doctor" and filled in her own medical assessment of Plaintiff because she assigned some weight to Dr. Rana's opinion and rejected Dr. Buresz's opinion. (Pl.'s Mem. at 9.) The court also finds this argument unpersuasive.

As the Commissioner points out, Drs. Rana and Buresz were not the only medical opinions in the record. The state agency consultant, Dr. Phillip Galle, also reviewed Plaintiff's medical evidence and determined that she was not disabled. More specifically, Dr. Galle reviewed the records from Drs. Rana and Buresz, as well as Plaintiff's medical imaging results, and concluded that she retained the

capacity for light level work. Although the ALJ did not discuss the specifics of Dr. Galle's opinion, she did state that she weighed the opinion and found that it was consistent with the other objective evidence. Based on this discussion, the ALJ did not "play doctor" and fill in her own medical assessment of Plaintiff. Instead, she properly considered the evidence before her, including Drs. Rana, Buresz, and Galles opinions, and supported her decision with substantial evidence.

The remainder of Plaintiff's argument seems to contend that she would have weighed the opinion of Dr. Rana differently, due to the nature and length of their treatment relationship.[8] It is immaterial to this court whether the ALJ mentioned every piece of evidence or if she weighed the evidence differently than Plaintiff would have preferred. *Young v. Barnhart*, 362 F.3d 995, 1001 (7th Cir. 2004.) We find that the ALJ properly supported her findings with substantial evidence, and therefore the ALJ did not commit any errors at step four.

Plaintiff also contends that the ALJ should have called upon a medical expert to assess or clarify Dr. Buresz's opinions. However, Plaintiff does not point to any case law to support this assertion, nor does she explain what additional evidence that the ALJ might have gathered that would be been favorable to a finding of disability. For this reason, the court finds this argument waived. *United States v. Berkowitz*, 927 F.2d 1376, 1384 (7th Cir. 1992) (stating that "undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived.").

---

[8] Plaintiff argues that Dr. Rana "spent only thirty minutes with Plaintiff, and did not review any records from her treating chiropractor or any medical records other than those from April 2012." (R. 8.)

**B.    The ALJ's Step Three Determination Was Supported by Substantial Evidence**

Plaintiff asserts that the ALJ committed reversible error when she determined that Plaintiff's severe spinal disorders did not meet or equal in severity Listing 1.02 or 1.04. (Pl.'s Mem. at 9.) The court disagrees.

At step three, an ALJ must consider whether a claimant's impairments meet or medically equal a listed impairment, either singly or in combination. 20 C.F.R. § 405.1520(a)(4)(iii). An ALJ should identify the Listing by name and offer more than a perfunctory discussion. *Barnett v. Barnhart,* 381 F.3d 664, 668 (7th Cir. 2004). Although an ALJ should provide a step-three analysis, a claimant first has the burden to present medical findings that match or equal in severity all the criteria specified by a Listing. *Knox v. Astrue*, 327 F. App'x 652, 655 (7th Cir. 2009); *Sullivan v. Zebley,* 493 U.S. 521, 531, 110 S.Ct. 885, 107 L.Ed.2d 967 (1990).

The court first turns to the ALJ's discussion of Listing 1.04, relating to disorders of the spine.[9] Listing 1.04 first required Plaintiff to demonstrate a

---

[9] 20 C.F.R. § 404, Subpt. P, App. 1, Listing 1.04 states:
> Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:
> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine); or
> B. Spinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every 2 hours; or
> C. Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic

disorder of the spine which resulted in "compromise of a nerve root . . . or the spinal cord." 20 C.F.R. § 404, Subpt. P, App. 1, Listing 1.04. First, the ALJ noted that Plaintiff did not have any of the listed disorders of the spine, nor did she present evidence of compromise of her nerve root or spinal canal. (R. 14.) Second, the ALJ pointed to Listing 1.04(A), (B), and (C), and similarly determined that there was no evidence that Plaintiff had satisfied the requirements of any of the subparts of the Listing. (*Id.*) Due to the ALJ's thorough discussion, the court finds that she adequately identified Listing 1.04 as the listing she was discussing and provided more than a perfunctory analysis.

Plaintiff contends that the ALJ premised her finding "upon selective quoting of the listing language;" however Plaintiff does not point the any language in Listing 1.04 that the ALJ failed to consider, nor does she articulate how consideration of such language would change the outcome of the ALJ's determination. For this reason, we find that ALJ did not commit an error in regard to Listing 1.04.

Next, the ALJ considered Listing 1.02B[10], relating to major dysfunction of a joint. (*Id.*) Listing 1.02B required that Plaintiff demonstrate evidence a gross

_____

nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b.

[10] 20 C.F.R. § 404, Subpt. P, App. 1, Listing 1.02B states:

Major dysfunction of a joint(s) (due to any cause): Characterized by gross anatomical deformity (e.g., subluxation, contracture, bony or fibrous ankylosis, instability) and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s), and findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint(s). With:

anatomical deformity, chronic joint pain, or abnormal motion. 20 C.F.R. § 404, Subpt. P, App. 1, Listing 1.02B. The ALJ determined that Plaintiff failed to demonstrate such requirements. (R. 14.) Next, Listing 1.02B required Plaintiff to present medically acceptable imaging which revealed, *inter alia*, joint space narrowing. 20 C.F.R. § 404, Subpt. P, App. 1, Listing 1.02B. After reviewing the record, the ALJ determined that Plaintiff's record contained no such imaging. (R. 14.) Based on the lack of evidence, the ALJ concluded that Plaintiff did not meet Listing 1.02B. Due to the ALJ's discussion, the court finds that she properly identified Listing 1.02B as the listing she was discussing and provided more than a perfunctory analysis.

Like she asserted with Listing 1.04, Plaintiff argues that the ALJ "handpicked [the] language" she used to address Listing 1.02B, but does not point the court to any specific portions of Listing 1.02B that the ALJ failed to consider. Likewise, the court finds that the ALJ sufficiently articulated her consideration of Listing 1.02B and supported her conclusions with substantial evidence.

Plaintiff contends that the ALJ impermissibly failed to consider the diagnoses of her chiropractor, Dr. Buresz, many of which she alleges are the exact symptoms required to meet Listings 1.02 and 1.04. As previously discussed, Dr. Buresz's notes can only be used to assess the *severity* of an already established medically determinable impairment and cannot be used to independently establish diagnoses. SSR 06-3p. As discussed above, the court finds no support from

---

B. Involvement of one major peripheral joint in each upper extremity (i.e., shoulder, elbow, or wrist-hand), resulting in inability to perform fine and gross movements effectively, as defined in 1.00B2c.

"medically acceptable sources" to corroborate the diagnoses provided by Dr. Buresz, and therefore the ALJ did not err which she did not consider them in her step three analysis.

Similarly, Plaintiff contends that her MRIs support a finding that she meets the Listings. State agency consultant, Dr. Galle, considered both of Plaintiff's MRIs when he made his disability determination and after reviewing her medical file he opined that she retained the capacity for light level work. The ALJ then relied on Dr. Galle's assessment when she made her disability determination. There can be no doubt that the ALJ was entitled to rely on Dr. Galle's opinions when she determined whether Plaintiff met or equaled the Listings. See *Schneck v. Barnhart*, 357 F.3d 697 (7th Cir. 2004) (holding that the ALJ could rely on the opinions of the state agency physicians when determining that plaintiff's back problems did not equal a listing); *see also Farrell v. Sullivan*, 878 F.2d 985, 990 (7th Cir. 1989) (finding that the ALJ's step three analysis contained substantial evidence when he based his determination on the findings of plaintiff's examining physician.). In doing so, the ALJ provided substantial evidence for her determination and built the requisite logical bridge between the evidence and her conclusions.

Finally, the ALJ considered Listing 12.04[11], related to affective disorders. Plaintiff asserts that the ALJ's Listing 12.04 analysis was not supported by

_____

[11] 20 C.F.R. § 404, Subpt. P, App. 1, Listing 12.04:
    Depressive, bipolar and related disorders (12.04).
    a. These disorders are characterized by an irritable, depressed, elevated, or expansive mood, or by a loss of interest or pleasure in all or almost all activities, causing a clinically significant decline in functioning. Symptoms and signs may include, but are not limited to, feelings of hopelessness or

substantial evidence because the ALJ (1) focused on what was not in the record, (2) failed to seek additional information from Dr. Jakimiec regarding Plaintiff's psychiatric impairment, and (3) failed to order a consultative psychiatric examination. The court that finds her arguments unpersuasive.

An applicant suffering from a mental disorder meets Listing 12.04 if she demonstrates two of the following: (1) marked restriction in activities of daily living; (2) marked difficulties in maintaining social functioning; (3) marked difficulties in maintaining concentration, persistence, and pace; or (4) repeated episodes of decompensation. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, §§ 12.02B, 12.04B, 12.06B. The ALJ found that Plaintiff had no restrictions in activities of daily living and social functioning, and no difficulties with regard to concentration, persistence, and pace. (R. 14.) In support of her finding, the ALJ noted that Plaintiff was able to perform household work, that she was able to maintain relationships with friends and family, and that she had retained the ability to concentrate on different tasks such as work, watching television, and caring for young children. (R. 14.)

Plaintiff asserts that the ALJ had a duty to build a complete record surrounding Plaintiff's mental impairment, which should have included ordering a consultative psychiatric evaluation or contacting Dr. Jakimiec to obtain updated

---

guilt, suicidal ideation, a clinically significant change in body weight or appetite, sleep disturbances, an increase or decrease in energy, psychomotor abnormalities, disturbed concentration, pressured speech, grandiosity, reduced impulse control, sadness, euphoria, and social withdrawal.
b. Examples of disorders that we evaluate in this category include bipolar disorders (I or II), cyclothymic disorder, major depressive disorder, persistent depressive disorder (dysthymia), and bipolar or depressive disorder due to another medical condition.

information. First, the court notes that Plaintiff bears the burden of proof to demonstrate that she is disabled. 20 C.F.R. § 404.1527(c)(3). Moreover, while the court recognizes that an applicant is "entitled to a full and fair record," it is also true that an applicant represented by counsel is presumed to have made her best case before an ALJ. *Mulligan v. Astrue*, 336 F. App'x 571, 578 (7th Cir. 2009). The record contains no evidence to suggest that Plaintiff presented or requested a psychiatric evaluation. Furthermore, Plaintiff failed to articulate how inclusion of such evidence would have led to a different disability determination. *Schoenfeld v. Apfel*, 237 F.3d 788, 798 (7th Cir. 2001) ("Appellant has failed to point to any specific evidence that the Commissioner excluded, or explain how appellant was prejudiced by the record that was created."). The record contains no evidence that Plaintiff work ability was limited by her anxiety. Plaintiff testified that she could not work long extended periods of time or clean more houses due to her back and arm pain, not her anxiety. (R. 32.) Further, as previously mentioned, it was Plaintiff's burden to present medical findings that matched or equaled in severity all of the criteria specified in the Listings. Besides Dr. Jakimiec's notation of an Effexor prescription issued on September 20, 2011, Plaintiff has pointed to no other evidence in the record that refers to her anxiety or any other medical opinion that assesses the severity of her anxiety.

Plaintiff also contends that the ALJ should have contacted Dr. Jakimiec to obtain additional relevant information pursuant to 20 C.F.R. § 404.1512. (Pl.'s Br. at 12.) Under 20 C.F.R. § 404.1512(e), an ALJ is required to re-contact a medical

source "if the evidence received is inadequate to allow the ALJ to reach a conclusion about whether the applicant is disabled." *Norris v. Astrue*, 776 F. Supp. 2d. 616, 631 (N.D. Ill. 2011). That is not the case here. Here the ALJ relied on, and cited to, other evidence in support of her disability determination. Thus, there was no need for her to re-contact Plaintiff's doctor. The court concludes that Plaintiff failed to advance her Listing 12.04 argument.

Based on the foregoing, the court finds that the ALJ did not commit reversible error at step three of her analysis. The ALJ properly supported her finding that Plaintiff did not meet any of the relevant listings with substantial evidence and built the requisite bridge between that evidence and her conclusions.

## C. The ALJ's Credibility Determination Was Not Patently Wrong

Plaintiff argues that the ALJ's RFC assessment is premised upon a credibility finding that is patently wrong, as it is based upon illogical inferences and incorrect standards of proof. (Pl.'s Mem. at 12.) The Commissioner responds that the ALJ's credibility finding was entitled to deference on appeal and that the ALJ reasonably found that Plaintiff's subjective allegations were not entirely credible. (Def.'s Mem. at 13.) The court agrees with the Commissioner.

An ALJ's credibility determination is granted substantial deference by a reviewing court unless it is "patently wrong" and not supported by the record. *Schmidt v. Astrue*, 496 F.3d 833, 843 (7th Cir. 2007); *Powers v. Apfel*, 207 F.3d 431, 435 (7th Cir. 2000); *see also Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008) (holding that in assessing the credibility finding, courts do not review the medical

evidence *de novo* but "merely examine whether the ALJ's determination was reasoned and supported"). However, an ALJ must give specific reasons for discrediting a claimant's testimony, and "[t]hose reasons must be supported by record evidence and must be 'sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight.'" *Lopez* ex rel. *Lopez v. Barnhart*, 336 F.3d 535, 539–40 (7th Cir. 2003) (*quoting Zurawski*, 245 F.3d at 887–88 (7th Cir. 2001)).

In the present case, the ALJ provided well-supported reasons for discounting the severity of Plaintiff's alleged symptoms, including inconsistences in her testimony. First, the ALJ noted that Plaintiff asserted that she was unable to lift her arms for the past three years, but stated that she continued to perform cleaning work two to three times per week since her onset date. (R. 16.) Similarly, the ALJ pointed to a function report where Plaintiff stated that she could only do laundry with her right hand, yet could cleaned a house for five hours. (*Id.*) Again, the ALJ found that her ability to work contradicted her testimony where she claimed she could not lift any objects or walk for more than thirty minutes. (*Id.*) Based on the inconsistencies between Plaintiff's alleged inability to move and her record of housework, the ALJ was entitled to determine that her pain was not a severe as she claimed.

The ALJ also founded his credibility determination in the lack of support from the objective medical records. *Qualls v. Colvin*, No. 14 CV 2526, 2016 WL

1392320, at *7 (N.D. Ill. Apr. 8, 2016). The court recognizes that an ALJ may not discount a Plaintiff's allegations based solely on a lack of supporting objective evidence; however, she may consider it as a probative factor in assessing a plaintiff's symptoms. *See Powers*, 207 F.3d at 435.

The ALJ first cited the medical opinion of Dr. Rana, who examined Plaintiff in September 2012. Dr. Rana noted that Plaintiff was uncooperative at her examination and complained of pain upon each movement. (R. 332.) The ALJ noted that upon examination, however, Plaintiff demonstrated no muscle spasms or atrophy, nor did she have any tenderness upon palpitation. (R. 334.) Indeed, Dr. Rana's examination revealed that aside from Plaintiff's back and shoulders, the Plaintiff demonstrated no difficulties with various movements. Next, the ALJ noted that Plaintiff alleged that she could not work for eight hours out of an eight hour work day, yet she was able to clean a house for five hours on July 5, 2012. In total, the ALJ found that these alleged inconsistencies supported his credibility finding.

When evaluating a plaintiff's credibility, the ALJ must also consider "(1) the claimant's daily activity; (2) the duration, frequency, and intensity of pain; (3) the precipitating and aggravating factors; (4) dosage, effectiveness, and side effects of medication; and (5) functional restrictions." *Scheck*, 357 F.3d at 703.

In this case, the ALJ rightfully discredited Plaintiff's allegations of pain because, as previously mentioned, Plaintiff's activities such as working contradicted her allegations of her extreme pain. Also, Plaintiff testified that Dr. Jakimiec referred her to a chiropractor and prescribed her pain medication, but did not

recommend steroid injections. (R. 34–35.) Further, Plaintiff sought treatment with an orthopedic specialist in the spring of 2013, and he also referred her to a chiropractor. (R. 35-36.) It seems plausible, that if Plaintiff's pain allegations were as extreme as she alleged, then Dr. Jakimiec and the orthopedic specialist would have offered far greater treatment regiments than the conservative course of action of referring Plaintiff to a chiropractor. Thus, the ALJ's consideration of objective evidence to assess the severity of Plaintiff's pain was not in err.

To the extent that the ALJ gave weight to Plaintiff's statements regarding the severity and intensity of her pain including her problems reaching overhead and with her lumbar and cervical spine, she factored those limitations into her RFC by limiting her to no more than frequently climbing ladders, ropes, and scaffolds and reducing her frequency to reach overhead. *Qualls*, 14 CV 2526, 2016 WL 1392320, at *7 (N.D. Ill. Apr. 8, 2016). Based on the foregoing reasons, the court finds that the ALJ's credibility determination was not "patently erroneous" and that she adequately supported her determination with substantial evidence.

## CONCLUSION

For the reasons stated above, Claimant's motion for summary judgment is denied, and the Commissioner's decision is affirmed. This is a final judgment.

**SO ORDERED.**                                      **ENTERED:**


**DATE:**    __March   30,   2017__

                                         **HON. MARIA VALDEZ**
                                         **United States Magistrate Judge**